IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JERRY MCCORMICK,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF MCALESTER, and<br><br>PITTSBURG COUNTY, OKLAHOMA,<br><br>Defendants. | Case No. CIV-11-166-RAW |

**ORDER**

Before the court is the motion for summary judgment by the City of McAlester (hereinafter "the City") [Docket No. 47]. Plaintiff filed this 42 U.S.C. § 1983 action on May 9, 2011, claiming that the City employs policies of: (1) failing to train its police officers; (2) encouraging its police officers to carry out false arrests, to commit assault against civilians, and to issue false charges and tickets against citizens, (3) failing to discipline its officers, and (4) failing to properly investigate complaints. For the reasons delineated below, the motion for summary judgment is GRANTED.

**SUMMARY JUDGMENT**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As Plaintiff points out, at this stage, the court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, Plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of his complaint. Id.

**UNDISPUTED MATERIAL FACTS**

As the City's motion begins, this case originated from a dispute between Plaintiff and his neighbors, including Officer Talbot and others. To be sure, the facts surrounding the dispute between these neighbors are hotly contested. The only facts that are material to the motion at issue, however, are the facts that pertain to the City's training of its police officers and to the City's other contested policies. The court, therefore, will focus on the facts relevant to each claim in the analysis below.

**ANALYSIS**

"[A] municipality cannot be held liable solely because it employs a tortfeasor, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). A municipality is only liable when it has a policy or custom that "'causes' an employee to violate another's constitutional rights." Id.

To establish that the City is liable, Plaintiff must show: (1) the existence of a City policy

or custom, and (2) that there is a direct causal link between the policy or custom and his alleged injuries. Bryson v. City of Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010) (citation omitted).

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions–and the basis for them–of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

Id. (internal quotation marks and citation omitted).

**CLAIM 1: Failure to Train Police Officers**

On August 31, 2010, a felony warrant was issued for Plaintiff's arrest. On the same day, the City's police officers arrested Plaintiff. Plaintiff argues that the warrant was without merit. Specifically, he argues that it was unfairly and unlawfully issued. For purposes of the motion for summary judgment on this claim, the court will assume that Plaintiff is correct in his assessment that the warrant was without merit.

Plaintiff claims that the City "grossly failed to train its police officers in the fundamental law of arrest and use of force in effecting arrest.[1]" He claims that this failure resulted in the City's officers arresting Plaintiff "without cause" and "without a valid warrant." While Plaintiff does not spend much time addressing this claim in his response to the City's motion, deductively, Plaintiff's argument is that the City's police officers should have known about the unfair treatment of Plaintiff, should have recognized that the warrant was without merit, and

---

[1] While Plaintiff claims that the officers were not trained in "use of force," he does not claim that they used excessive force when they arrested him.

recognizing that, should not have arrested him. Plaintiff also seems to argue that the charges that resulted in the warrant came about as result of the City's failure to train its police officers.

A municipality will be liable under § 1983 for inadequate police training "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 131 S.Ct. 1350, 1360 (2011) (citation omitted).

"[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Id. A "policy of inaction" after having received notice creates the constitutional violation. Id. "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities." Id. (citation omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. (citation omitted).

Plaintiff has not presented any evidence of a pattern of similar violations by untrained employees. Plaintiff has presented nothing that would show that the City's police officers have a pattern of arresting citizens on invalid warrants or of causing invalid warrants to be issued.[2] Additionally, Plaintiff admits that he "has no knowledge or information regarding the training

---

[2]Plaintiff's arguments regarding Officer Morris being stopped for DUI are of no assistance to Plaintiff here, as they do not include any claims of an invalid warrant being issued for Officer Morris' arrest. Officer Morris' plight is entirely distinct from Plaintiff's.

provided to police officers with [the City]." Accordingly, the motion for summary judgment is GRANTED as to this claim.

**CLAIM 2: Policy of Encouraging Unlawful Behavior**

Plaintiff claims that the City encouraged its police officers to carry out false arrests, to commit assault against civilians, and to issue false charges and tickets against citizens. Plaintiff has presented only conclusory allegations and no evidence whatsoever that the City or any City official *encouraged* the City's police officers to carry out false arrests, to commit assault against civilians, or to issue false charges and tickets against citizens. Accordingly, summary judgment is GRANTED as to this claim.

**CLAIMS 3 & 4: Failure to Discipline Police Officers & to Investigate Complaints**

Plaintiff's third and fourth claims overlap somewhat, so the court will address them together. Plaintiff claims that the City has a policy or custom of failing to investigate complaints. More specifically, Plaintiff claims that when he made complaints about his neighbor, Officer Talbot, the City did not "properly investigate" those complaints. Plaintiff complained not only to the Chief of Police, but also to the Mayor, the City Manager and the City Council. Plaintiff argues that the Mayor, the City Manager and the City Council validated the Chief of Police's "decision not to investigate."

The City's alleged failure to investigate leads to Plaintiff's claim that the City has a policy or custom of failing to discipline its police officers. More specifically, Plaintiff claims that the City failed to discipline Officer Talbot for the allegations of harassment made in Plaintiff's complaints to the City. According to Plaintiff, the City ignored Officer Talbot's reputation as a "hothead" and "selectively enforced the law against [Plaintiff]." Plaintiff maintains that these

5

failures allowed Officer Talbot to continue to harass Plaintiff.

A municipality may be liable "for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. Id. at 481 (emphasis added). "The fact that a particular official–even a policymaking official–has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. Id. at 481-82. Of course, "whether an official had final policymaking authority is a question of state law."

It is clear from the City's Charter that the City Council and the City Manager had final authority to establish policy with respect to an action or inaction ordered. Plaintiff claims that they validated the Chief of Police's decisions not to investigate his claims against Officer Talbot and not to discipline Officer Talbot.

In fact, the City's police officers did investigate the disputes between Plaintiff and Officer Talbot. Plaintiff recognizes as much in his Complaint. Plaintiff also attached to his response evidence of investigations. Ultimately, however, the Chief of Police believed Officer Talbot and not Plaintiff. Therefore, Plaintiff complains that there was no "proper investigation." Plaintiff attached to his response a letter from the Oklahoma State Bureau of Investigation stating that the investigation completed by the City's police department was sufficient for the City's district attorney to file charges against Plaintiff.

Plaintiff has not presented any evidence to show that the investigations into his complaints against Officer Talbot were, in fact, improper. He simply disagrees with the outcome

of those investigations and argues conclusively that Officer Talbot should have been disciplined.

Accordingly, the motion is GRANTED as to Plaintiff's third and fourth claims.

**CONCLUSION**

The motion for summary judgment [Docket No. 47] is hereby GRANTED.

IT IS SO ORDERED this 8th day of May, 2012.

**Dated this 8th day of May, 2012.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma